UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE

GREAT AMERICAN INSURANCE
COMPANY,

                Plaintiff,

v.

ORACLE ELEVATOR HOLDCO, INC. FKA
OEC HOLDING CORPORATION, LAZARO
MENDEZ, and JOETTE MENDEZ,

                Defendants,
_____/

ORACLE ELEVATOR HOLDCO, INC. FKA
OEC HOLDING CORPORATION

                Cross-Plaintiff,

v.

EVEREST NATIONAL INSURANCE
COMPANY.

                Cross-Defendant.

Case No.: 0:22-cv-61997-DHL

**DEFENDANT/CROSS-PLAINTIFF ORACLE ELEVATOR HOLDCO, INC. FKA OEC HOLDING CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT DIRECTED AT DEFENDANT/CROSS-DEFENDANT, EVEREST NATIONAL INSURANCE COMPANY**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, Defendant/Cross-Plaintiff, Oracle Elevator Holdco, Inc. F/K/A OEC Holding Corporation ("Oracle"), by counsel, respectfully submits this Motion for Partial Summary Judgment and Incorporated Memorandum of Law ("Motion") and requests that the Court find that Oracle is entitled to a presumption of bad faith against Defendant/Cross-Defendant, EVEREST NATIONAL INSURANCE COMPANY ("Everest") and as grounds, thereof states as follows:

## PRELIMINARY STATEMENT

Oracle was exposed to an excess judgment of $7,302,053.37 because Everest failed to comply with its basic good faith claim handling obligations. Prior to initiating its statutory bad faith claim against Everest, Oracle filed a Civil Remedy Notice of Insurer Violations ("CRN"). Everest did not respond to the CRN. Under Florida law, the consequence of an insurer's failure to respond to a CRN is well-settled: it creates a presumption of bad faith against the insurer. Because Everest failed to respond to the CRN, Oracle is entitled to a presumption of bad faith against Everest as a matter of law.

## STATEMENT OF FACTS[1]

Oracle was sued in an underlying personal injury action (the "Mendez Action").[2] At the time of the Mendez Action, Oracle was insured by Everest under a commercial general liability policy with limits of $1,000,000.[3] Everest defended Oracle in the Mendez Action.[4] During Everest's control of Oracle's defense, at least two settlement demands within the $1,000,000 limits were communicated by Oracle's assigned defense counsel to the Everest adjuster.[5] Specifically, Everest was informed of a $500,000 demand in September 2021 and a $750,000 demand in October 2021.[6] Despite receiving these demands, Everest elected not to accept them or even make a counter-offer because it did not believe the demands were reasonable.[7]

The Mendez Action was tried in April 2022.[8] The jury trial resulted in an excess jury

---

[1] All Exhibits referenced herein are attached to Oracle's Statement of Materials Facts, filed simultaneous to the instant motion.
[2] D.E. 145 at p. 26 ¶9; D.E. 148 at p. 3 ¶9.
[3] D.E. 145 at p. 26 ¶10; D.E. 148 at p. 3 ¶10.
[4] D.E. 145 at p. 27 ¶21.
[5] Exhibit A, Deposition of John Lago ("Lago Dep."), at 67:24-68:1.
[6] Id. at 67:9-19.
[7] Id. at 67:24-68:1.
[8] D.E. 145 at p. 30 ¶46; D.E. 148 at p. 7 ¶46; Exhibit A, Lago Dep. at 175:5-6.

2

verdict against Oracle of $7,710,000.00, which was subsequently reduced to a $7,302,053.37 judgment.[9]

Following entry of the judgment against Oracle, Oracle and its insurers[10] decided to appeal.[11] Despite the collective decision to pursue an appeal on Oracle's behalf, Oracle's insurers, including Everest, would not commit to funding the necessary appellate bond.[12] Thus, with the deadline to a post a bond looming, and an excess judgment having been entered against Oracle, Oracle demanded that its insurers either post the bond or commit to contributing towards a settlement of the Mendez Action to avoid the necessity of an appeal.[13]

On August 24, 2022, Everest confirmed with Oracle that its $1,000,000 policy limit would be made available for settlement purposes; however, Everest would not agree to post a bond for any amount in excess of its $1,000,000 limit.[14]

On September 13, 2022, Oracle filed a Civil Remedy Notice of Insurer Violations ("CRN") against Everest with the Florida Department of Financial Services pursuant to Florida Statute § 624.155.[15] The CRN demanded that Everest: (1) post the required appellate bond; (2) settle the claim; or (3) pay the judgment. Everest did not respond to the CRN.[16] As a result, Oracle settled the Mendez Action for $5,500,000, using $4,500,000 of its own money after Everest paid its $1,000,000 limits.[17] Oracle subsequently brought this bad faith action against Everest.

---

[9] D.E. 145 at p. 30 ¶¶48-50; D.E. 148 at p. 7 ¶¶48-50.
[10] Oracle maintained excess coverage with Great American Insurance Company with limits of $10,000,000. Coverage under that policy is being litigated in this action.
[11] D.E. 145 at p. 30 ¶¶51-52; D.E. 148 at p. 7 ¶¶51-52.
[12] Exhibit B, Affidavit of Sean Barrette ("Barrette Aff.") at p. 2 ¶10.
[13] Exhibit C, Deposition of Oracle ("Oracle Dep.") at 19:7-16.
[14] Exhibit B, Barrette Aff. at p. 2 ¶10.
[15] Id. at p. 2 ¶11.
[16] Id.
[17] Id. at p. 2 ¶16.

3

## **LEGAL ARGUMENT**

Florida Statute § 624.155 (2022) provides a procedural framework that must be followed before an insured may bring a statutory bad faith claim against an insurer.[18] Pursuant to the statute, "[a]s a condition precedent to bringing an action under this section, the department and the authorized insurer must have been given 60 days' written notice of the violation." Fla. Stat. § 624.155(3)(a) (2022). The filing of a CRN triggers a 60-day window within which the insurer can avoid a statutory bad faith claim if "the damages are paid or the circumstances giving rise to the violation are corrected." Id. at § 624.155(3)(c).

"An insurer's failure to respond within the sixty-day period will create a presumption of bad faith sufficient to shift the burden to the insurer to show why it did not respond." Imhof v. Nationwide Mutual Insurance Company, 643 So.2d 617 (Fla.1994) *receded from on other grounds*, State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So. 2d 55, 63 (Fla. 1995); see also Fridman v. Safeco Ins. Co. of Illinois, 185 So. 3d 1214, 1220 (Fla. 2016) (quoting [Imhof]) ("if an insurer fails to respond to a civil remedy notice within the sixty-day window, there is 'a presumption of bad faith sufficient to shift the burden to the insurer to show why it did not respond.'"); Oak Cas. Ins. Co. v. Travelers Indem. Co., 778 So. 2d 483, (Mem)–484 (Fla. 3d DCA 2001) ("We affirm finding that the trial court properly gave a jury instruction pursuant to [Imhof], because Oak Casualty failed to respond within sixty days to the notice of violation sued upon.").

The court may grant partial summary judgment on the presumption of bad faith due to an insurer's failure to respond to a CRN. See Eaker Farms, Inc. v. Ace Prop. & Cas. Ins. Co., 04-21726-CIV, 2005 WL 8155888, at *2 (S.D. Fla. Apr. 13, 2005).

---

[18] Oracle has asserted statutory and common law bad faith claims against Everest. Oracle reserves all rights with respect to both claims.

Here, Oracle never received a response to its CRN from Everest. Further, the Florida Department of Financial Services maintains a public database reflecting the filing of CRNs and responses thereto. See Peterson & Young v. Jewelers Mut. Ins. Co., 23-81253-CIV, 2024 WL 472292, at *3 (S.D. Fla. Feb. 7, 2024). There is no record of Everest filing a response to Oracle's CRN.[19] It is axiomatic that the court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Further "[A] court may take judicial notice at any stage of the proceeding." Id. at 201(d). "Public records are among the permissible facts that a district court may consider." Universal Express, Inc. v. U.S. S.E.C., 177 Fed. Appx. 52, 53 (11th Cir. 2006). Filings with the Florida Department of Financial Services are "publicly available on an official website maintained by the Florida Department of Financial Services, and thus. . . a 'matter of public record.'" Peterson & Young, 2024 WL 472292, at *3. Because there is no public record of Everest filing a response to Oracle's CRN, the court may properly take judicial notice of that fact.

To the extent that Everest argues that its payment of $1,000,000 towards settlement of the Mendez Action constitutes its "response" to the CRN, that argument is wholly without merit. Prior to the CRN being filed, Everest had *already confirmed* with Oracle that its $1,000,000 limits would be available for settlement.[20] Its coincidental delivery of that payment after the CRN was filed cannot be characterized as its "response" to the CRN. The inescapable fact is that Everest never provided Oracle with any response to the CRN, nor did Everest purport to qualify its payment as such.

---

[19] See Filing Number: 646881, Civil Remedy Notice of Insurer Violations, https://apps.fldfs.com/CivilRemedy/ViewFiling.aspx?fid=646881 (last visited Nov. 7, 2024).
[20] See Exhibit B, Barrette Aff. at p. 2 ¶16; see also Exhibit D, E-mail from R. Nicolaides to C. Carson-Freymann dated August 24, 2022.

As demonstrated above, there is no genuine issue of material fact that Oracle filed its CRN on September 13, 2022, and that Everest did not respond to the CRN within the statutory 60-day time period or otherwise. Pursuant to Imhof and its progeny, Oracle is entitled to a presumption of bad faith against Everest as a matter of law.

**WHEREFORE**, for the foregoing reasons, Defendant/Cross-Plaintiff, Oracle, respectfully requests that this Court enter a partial summary judgment in its favor, declaring and adjudicating as follows:

i. Everest failed to timely respond to Oracle's Civil Remedy Notice.

ii. Oracle is entitled to a presumption of bad faith against Everest at trial.

iii. Any other relief this Court deems just and proper, including taking judicial notice of there being no record on the Florida Department of Financial Services website of Everest filing a response to Oracle's Civil Remedy Notice pursuant to Fed. R. Evid. 201.

DATED: November 13, 2024               Respectfully submitted,

/s/Jonathan W. Chambers
Sponsoring Attorney
Jonathan W. Chambers
Bar No. 105799
JChambers@sdvlaw.com
Saxe Doernberger & Vita, P.C.
999 Vanderbilt Beach Road, Suite 603,
Naples, Florida 34108
Tel. No. 239.316.7244

Jeffrey J. Vita
(*Admitted Pro hac vice admission*)
Anna M. Perry
(*Admitted Pro hac vice admission*)
jvita@sdvlaw.com
aperry@sdvlaw.com
Saxe Doernberger, & Vita P.C.
35 Nutmeg Drive, Suite 140

Trumbull, CT 06611
Tel. No. 203.287.2100

Jonathan C. Bunge
(*Admitted Pro hac vice admission*)
jonathanbunge@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP, 191 N. Wacker Drive, Suite 2700, Chicago, IL 60606
Tel. No. 312-705-7476

*Attorneys for Defendant/Third-party Plaintiff
ORACLE ELEVATOR HOLDCO, INC. f/k/a OEC HOLDING CORPORATION*

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2024**,** a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/Jonathan W. Chambers
Jonathan W. Chambers