UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 0:22-cv-61997-DSL/VALLE

GREAT AMERICAN INSURANCE
COMPANY,

        Plaintiff,

v.

ORACLE ELEVATOR HOLDCO, INC.
F/K/A OEC HOLDING CORPORATION
and EVEREST NATIONAL INSURANCE
COMPANY,

        Defendants.
_____/

## EVEREST NATIONAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT ON ORACLE'S CROSSCLAIM AND COUNT II OF GREAT AMERICAN'S FIRST AMENDED COMPLAINT

Everest National Insurance Company ("Everest"), pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, files this Motion for Summary Judgment on Oracle Elevator Holdco, Inc. f/k/a OEC Holding Corporation's ("Oracle") Crossclaim [D.E. 145, pp. 24-39] and Count II of Great American Insurance Company's ("Great American") First Amended Complaint [D.E. 60], and states that there is no genuine dispute as to any material fact and judgment should be entered in favor of Everest as a matter of law.  Everest's Statement of Material Facts for this motion [D.E. 171] has been filed contemporaneously herewith.[1]

## SUMMARY OF ARGUMENT

---

[1] Unless otherwise indicated herein, this motion uses the same defined terms and abbreviations as Everest's Statement of Material Facts.

Oracle and its excess liability insurer, Great American, have both asserted bad faith claims against Oracle's primary liability insurer, Everest, in this case based on the theory that there was a point in time that Everest could and should have settled an underlying personal injury lawsuit (the "Mendez Lawsuit") within Everest's $1,000,000 primary policy limit and that the failure to do so resulted in an excess judgment of $7,302,053. The Mendez Lawsuit ultimately settled for a lesser amount with Everest paying its $1,000,000 limit, and Oracle paying the remainder due to Great American's denial of excess coverage under its $10 million policy.

The undisputed facts establish that Everest never had an opportunity to settle the underlying Mendez Lawsuit within its $1 million policy limit because Mr. Mendez pre-authorized his attorney to reject any offer of $1 million or less, and his attorney therefore rejected all such offers. In fact, the lowest authority Mr. Mendez gave his attorney to settle at any time was $2 million. Therefore, Oracle's and Great American's bad faith claims against Everest fail as a matter of law. Consequently, summary judgment should be granted in Everest's favor on Oracle's Crossclaim and on Count II of Great American's Amended Complaint.

To the extent Oracle also alleges in Count I of its Crossclaim that Everest breached its duty to "take measures to settle the Mendez [Lawsuit] in excess of the Everest Policy limits," that claim should be dismissed because there is no such duty under Florida law. Additionally, Count I of the Crossclaim fails because Oracle did not give Everest a 60-day cure period as required under the statute.

**ARGUMENT AND INCORPORATED MEMORANDUM OF LAW**

I. **Oracle's Crossclaim**

Oracle's Crossclaim includes one count of common law bad faith and one count of statutory bad faith against Everest. *See* D.E. 145, pp. 33-39. The standard for bad faith under the

statute and common law is the same. *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 62 (Fla. 1995); Fla. Stat. § 624.155. Florida law allows the pursuit of both a statutory and common law bad faith claim at the same time, but ultimately Oracle will have to elect its remedy because the statute explicitly states that claimants "shall not be entitled to a judgment under both remedies." Fla. Stat. § 624.155(8).

Oracle alleges that Everest failed in good faith to settle the Mendez Lawsuit within its $1 million policy limit when it could and should have done so. Specifically, Oracle contends that Everest had the ability to settle the Mendez Lawsuit within the $1 million policy limit in September and October of 2021 when Mr. Mendez's counsel allegedly made demands of $500,000 and $750,000. D.E. 145, p. 33 ¶¶ 75-76, 79, p. 37, ¶82(a)(c)(d), ¶ 93 (a)-(c). Relatedly, Oracle alleges that Everest failed to investigate and evaluate Oracle's potential exposure, initiate settlement negotiations, exercise reasonable diligence in handling the claim, and respond to Mr. Mendez's counsel's demands. *Id.* at ¶¶ 84(a)-(d), 93(d)-(e).

Oracle further alleges that Everest failed to "take measures to settle the Mendez [Lawsuit] in excess of the Everest Policy limits after it refused to settle within limits[.]" *Id.* at ¶ 82(b).

**II      Count II of Great American's Amended Complaint**

In Count II of its Amended Complaint, Great American asserts an alternative unmatured contingent bad faith claim against Everest, should it be determined that Great American wrongfully denied excess coverage based on late notice. *See* D.E. 60, ¶ 28-30.

To the extent that Great American pays under its excess policy, Great American would then be in a position to assert a claim for bad faith against Everest under the doctrine of equitable subrogation. *See Perera v. U.S. Fidelity and Guar. Co.*, 35 So. 3d 893, 900 (Fla. 2010) (An "excess carrier [] may bring a bad-faith claim against a primary insurer by virtue of equitable subrogation

under certain circumstances where the primary insurer has not acted in good faith. Under the doctrine of equitable subrogation, an excess insurer has the right to 'maintain a cause of action ... for damages resulting from the primary carrier's bad faith refusal to settle the claim against their common insured.'"); *Vigilant Ins. Co. v. Continental Cas. Co.*, 33 So. 3d 734, 738-739 (Fla. 4th DCA 2010) (excess carrier sustains damages when it pays under the excess policy).

Great American, like Oracle, alleges that Everest breached its duty to Oracle to settle the Mendez Lawsuit within the $1 million primary policy limit when it could have and should have done so. D.E. 60, ¶ 29. Although Great American alleges that there were "numerous opportunities" to settle within the $1 million primary limit, Great American only alleges two specific opportunities: "in September 2021 for $500,000, and October 2021 for $750,000." D.E. 60, ¶ 29. These allegations refer to purported settlement demands that were supposedly conveyed orally by Mr. Mendez's counsel to Oracle's defense counsel. *See* D.E. 167-11, Mark Herring Depo., 149:17-150:8. Great American's corporate representative testified that Great American is not aware of any other alleged opportunities to settle within the primary limit. *Id.* at 196:16-197:11.

The predecessor judge in this case allowed both Oracle's claim and Great American's unmatured contingent subrogation claim to remain in this case at this time. *See* D.E. 103, pp. 11-13, 15-18. Although Great American's claim is technically unripe and cannot be tried unless and until Great American pays Oracle for the excess damages, judgment can (and should) be rendered on both claims at this time because a judgment in Everest's favor on Oracle's claim will necessarily extinguish Great American's right to pursue a contingent subrogation claim. *See Dade County School Bd. V. Radio Station WQBA*, 731 So. 2d 638, 647(Fla. 1999) ("[U]nder equitable subrogation, 'the person discharging the debt stand[s] in the shoes of the person whose claim has been discharged, thereby succeeding to the rights and priorities of the original creditor.' …From

this premise, it logically follows that if the subrogor has no rights or priorities against a specified third party, then the subrogee has nothing to inherit as against that third party.").

### III. Legal Standards

The bad faith claims against Everest are governed by Florida law. *See Clifford v. Commerce Ins. Co.*, 2009 WL 3387737, at *1 (S.D. Fla. Oct. 16, 2009) ("Florida law controls bad faith insurance issues in cases where the underlying personal injury or wrongful death lawsuit was brought and defended in Florida and where settlement negotiations took place in Florida, regardless of where the insurance contract was executed."); *see also Government Employees Ins. Co. v. Grounds*, 332 So. 2d 13, 14 (Fla. 1976); *Adams v. Fidelity & Cas. Co. of New York*, 920 F.2d 897, 899 n. 5 (11th Cir. 1991); *Teachers Ins. Co. v. Berry*, 901 F. Supp. 322, 323-324 (N.D. Fla. 1995).

Florida law on insurer bad faith provides that "in handling the defense of claims against its insured, the insurer has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980). In *Boston Old Colony*, the Florida Supreme Court explained that this duty of good faith requires the insurer to "give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, <u>if possible</u>, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." 386 So. 2d at 785.[2]

"An insurer cannot act in bad faith for failure to settle when it did not have a reasonable opportunity to enter into a settlement on behalf of its insured in the first place." *Deary v. Progressive Am. Ins. Co.*, 536 F. Supp. 3d 1258, 1269 (S.D. Fla. 2021) (citing *RLI Ins. Co. v.*

---

[2] All underlined emphasis herein is added unless otherwise noted.

*Scottsdale Ins. Co.*, 691 So. 2d 1095, 1096 (Fla. 4th DCA 1997)), *aff'd*, 2022 WL 2916358 (11th Cir. July 25, 2022). Florida's Standard Jury Instruction defines bad faith as follows:

> **4.04 INSURER'S BAD FAITH (FAILURE TO SETTLE)**
>
> Bad faith on the part of an insurance company is failing to settle a claim when, under all the circumstances, <u>it could</u> and should have done so, had it acted fairly and honestly toward [its policyholder] [its insured] [an excess carrier] and with due regard for [his][her][its][their] interests.

*See also* §624.155(1)(b)1. ("Any person may bring a civil action against an insurer when such person is damaged ... [b]y the commission of any of the following acts by the insurer: 1. Not attempting in good faith to settle claims when, under all the circumstances, it <u>could</u> and should have done so, had it acted fairly and honestly toward its insured and with due regard for his or her interests[.]"); *Powell v. Prudential Prop. & Cas. Ins. Co.,* 584 So. 2d 12, 14 (Fla. 3d DCA 1991) (insurer must have opportunity to settle within limits).

Summary judgment in a bad faith action is appropriate "where the undisputed facts would allow no reasonable jury to conclude the defendant acted in bad faith." *Johnson v. Geico Gen. Ins. Co.*, 318 Fed. Appx. 847, 850 (11th Cir. 2009); *Martin v. Allstate Prop. And Cas. Ins. Co.* 794 F. Appx. 882, 887 (11th Cir. 2019).

**IV. Everest Had No Opportunity to Settle the Mendez Lawsuit Within the $1 Million Primary Limit**

Oracle's and Great American's claims are based on notes and testimony from Everest's claims adjuster John Lago that Oracle's defense counsel, Peter Weinstein, told Mr. Lago that Mr. Mendez's attorney made an oral demand of $500,000 in September of 2021 and an oral demand of $750,000 on October 18, 2021. Mr. Mendez's attorney, Todd Poses, denies that he communicated any such offers to settle and so testified.

Regardless of whether Mr. Poses did or did not make settlement demands in the amount of $500,000 and $750,000 or float those numbers as possibilities,[3] the undisputed material fact remains that Mr. Mendez never authorized any such demand and never authorized his attorney to accept any sum under $2 million. In fact, Mr. Mendez pre-authorized his attorney to reject any offer less than $2 million.

It is well settled that an attorney's demand or agreement to settle a claim is totally ineffective without his or her client's consent. *See Jorgensen v Grand Union Co.*, 490 So.2d 214 (Fla 4th DCA 1986); *Johnson v. Skarvan*, 992 So. 2d 873, 875 (Fla. 5th DCA 2008); *Collado v. Pavlow*, 951 So.2d 69, 71 (Fla. 5th DCA 2007); *Nehleber v. Anzalone*, 345 So. 2d 822 (Fla. 4th DCA 1977). "The mere employment of an attorney does not of itself give the attorney the implied or apparent authority to compromise his client's cause of action." *Nehleber*, 345 So. 2d at 823; *see also Johnson*, 992 So. 2d at 875; *Collado*, 951 So. 2d at 71.

"The law is clear in that a client's express authority given to his attorney to settle his cause of action must be clear and unequivocal." *Jorgensen*, 490 So. 2d at 215. In all of the above cases, there was no evidence that the client gave his or her attorney clear and unequivocal authority to settle the case, and therefore, the courts held that there was no settlement, despite the attorney's agreement to the settlement.

---

[3] Great American's retained expert, attorney Mark Boyle, testified that lawyers often have soft discussions where they float numbers that are different than their official settlement positions. *See* D.E. 170-2, Mark Boyle Depo., 35:10-36:7. "Sometimes these soft discussions … that the lawyers have are a launching point for more detailed discussions. And as lawyers, in order to transact, everybody has to be able to retreat to their position but have kind of candid conversations with their opposition about, well, you know, maybe my client would do X if you did Y, things like that. And then everybody's still at their formal bargaining positions when the formal bargainings or mediations resume." *Id.* at 39:5-14.

Even if Mr. Poses demanded or "floated" $500,000 or $750,000 as potentially acceptable numbers (which he denies), his testimony is clear that he never had authority to make those demands, which is the determinative issue. Because Everest never had an opportunity to settle the Mendez Lawsuit within the $1 million policy limit, summary judgment on the bad faith claims premised on a failure to settle within limits should be entered in its favor.

V. **Everest Had No Duty to Settle for Any Amount in Excess of the $1 Million Policy Limit And Was Not Given The Requisite 60-Day Statutory Cure Period.**

In Count I of its Crossclaim against Everest, alleging a violation of section 624.155, Florida Statutes,[4] Oracle alleges that Everest failed to "take measures to settle the Mendez [Lawsuit] in excess of the Everest Policy limits," suggesting that Everest had a duty to pay settlement sums in excess of its policy limit. *See* D.E. 145, p. 34 (¶ 82(b)). Oracle is incorrect.

Section 624.155 "codifies the common law with respect to third-party bad faith." *Macola v. Gov't Employees Ins. Co.*, 953 So. 2d 451, 457 (Fla. 2006). Florida's common law recognizes a third-party bad faith cause of action against a liability insurer for failing to settle a claim against its insured in good faith <u>within the policy limit</u> when the insured is damaged by a judgment in excess of the limit. *See, e.g., Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783 (Fla. 1980); *Thompson v. Commercial Union Ins. Co of N.Y.*, 250 So. 2d 259 (Fla. 1971); *Fid. and Cas. Co. of N.Y. v. Cope*, 462 So. 2d 459 (Fla. 1985); *see also State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55 (Fla. 1995) (outlining history of third-party common law bad faith action).

As the predecessor judge in this case recognized in a previous ruling, D.E. 136 at pp. 13-15, Everest did <u>not</u> have a duty to pay settlement sums in excess of its policy limit, and Everest's

---

[4] Oracle also alleges a violation of section 626.9541(1)(i), Florida Statutes. *See* D.E. 145, p. 35 (¶ 84). Causes of action for alleged violations of section 626.9541(1)(i) arise under section 624.155(1)(a)(1).

refusal to do so <u>cannot</u> be used as evidence of bad faith.[5] "Florida courts have held that the duty of good faith simply 'requires the carrier to try realistically to settle the case within policy limits and thereby limit the insured's liability to an amount of damages that is covered by the policy.'" *Mattadeen v. State Farm Mut. Auto. Ins. Co.*, 04-80034-CIV, 2004 WL 6247906, at *8 (S.D. Fla. Dec. 23, 2004) (quoting *Fox v. McCaw Cellular Comms. Of Fla., Inc.*, 745 So. 2d 330, 335 (Fla. 4th DCA 1988)). Consequently, "[c]ourts have held … that 'in a case where a liability policy has limits of $100,000, and the plaintiff in the underlying tort action demands $100,001, <u>an insurer that offers the full policy limit but refuses to pay a dollar more cannot be held to have acted in bad faith</u>. Thus, … courts have unanimously held that insurers have 'no duty to consider a settlement proposal in excess of the policy limits.'" *Id.* (internal citations omitted).

Additionally, Oracle did not provide Everest with the requisite statutory notice and 60-day cure period because Oracle filed its civil remedy notice ("CRN") after the excess judgment, giving Everest no opportunity to cure any purported bad faith in failing to pay its policy limit. Section 624.155(3)(a) provides that, "[a]s a condition precedent to bringing an action under this section, the department and the authorized insurer must have been given 60 days written notice of the violation." "No action shall lie if, within 60 days after the insurer receives notice from the department in accordance with this subsection, the damages are paid or the circumstances giving rise to the violation are corrected." §624.155(3)(a).

"[T]he statutory cause of action for extra-contractual damages simply never comes into

---

[5] Relatedly, Everest did not have a duty under its policy to post any appellate bonds. *See* D.E. 60-1, Everest Primary Policy. To the extent that the policy provides for payment of other types of bonds (*e.g.*, "bonds to release attachments"), Everest was not required to pay bond amounts in excess of the $1 million policy limit. *Id.* at p. 26 ("We will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend: … **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance." We do not have to furnish these bonds.").

existence until expiration of the sixty-day window without the payment of the damages owed under the contract." *Talat Enterprises, Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278, 1284 (Fla. 2000); *see also Clauss v. Fortune Insurance Co.*, 523 So. 2d 1177 (Fla. 5th DCA 1988) (tender of policy limits within 60 day-cure period precluded a statutory third-party bad faith claim); *Francois v. Illinois Nat. Ins. Co.*, 2002 WL 33760405, at *3 (S.D. Fla. Mar. 28, 2002), *aff'd,* 49 Fed. Appx. 290 (11th Cir. 2002); *compare Macola v. Gov't Employees Ins. Co.*, 953 So. 2d 451, 458 (Fla. 2006) ("[A]n insurer's tender of the policy limits to an insured in response to the filing of a [CRN] under section 624.155 by the insured, after the initiation of a lawsuit against the insured but before entry of an excess judgment, does not preclude a <u>common law</u> cause of action against the insurer for third-party bad faith.").

Here, there is no dispute that Everest tendered its $1 million policy limit after the Mendez Lawsuit was initiated but before the excess judgment was entered.  Thus, although *Macala* provides that Oracle may have a <u>common law</u> cause of action for bad faith, *Clauss* and *Talat* make clear that the <u>statutory</u> cause of action ceases to exist because the "violation" under section 624.155 has been cured by payment of the contractual amount owed under the Everest policy.

## **CONCLUSION**

Everest respectfully requests that this Honorable Court enter judgment in favor of Everest on Oracle's Crossclaim and Count II of Great American's Amended Complaint.

## **Request for Hearing**

Pursuant to Local Rule 7.1(b)(2), Everest respectfully requests an oral argument on this Motion for Summary Judgment.  A hearing would assist the Court by allowing Everest to thoroughly explain the factual and legal reasons supporting the motion and to respond to any questions the Court may have. A hearing would facilitate a more thorough examination of the

issues raised, providing valuable context for the Court's decision-making. Everest estimates that approximately 2 hours would be sufficient for the hearing.

                Respectfully submitted,

By: /s/ Jackson Shuford
     JACKSON F. SHUFORD
     Florida Bar No. 1018807
     IRENE PORTER
     Florida Bar No. 567280
     HICKS, PORTER, EBENFELD
     & STEIN, P.A.
     5301 Blue Lagoon Drive, Suite 900
     Miami, FL  33131
     Tel:    305/374-8171
     Fax:   305/372-8038
     Primary:    iporter@mhickslaw.com
                       jshuford@mhickslaw.com
     Secondary:  eclerk@mhickslaw.com
                       bpaz@mhickslaw.com
                       gmunoz@mhickslaw.com
     *Counsel for Everest National Insurance Company*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **November 13, 2024**, a true and correct copy of the foregoing was filed using the Court's Electronic Filing system (CM/ECF), which will serve a copy on all counsel of record.

                By:    /s/ Jackson Shuford
                        JACKSON F. SHUFORD
                        Florida Bar No. 1018807

HICKS, PORTER, EBENFELD & STEIN, P.A.
5301 BLUE LAGOON DRIVE, SUITE 900, MIAMI, FL 33126 • TEL. 305/374-8171 • FAX 305/372-8038