**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

CASE NO. 0:22-cv-61997-LEIBOWITZ/VALLE

GREAT AMERICAN INSURANCE
COMPANY,

               Plaintiff,

v.

ORACLE ELEVATOR HOLDCO, INC.
FKA OEC HOLDING CORPORATION,
and EVEREST NATIONAL INSURANCE
COMPANY,

               Defendants,

_____ /

ORACLE ELEVATOR HOLDCO, INC.
FKA OEC HOLDING CORPORATION,

               Cross-Plaintiff,

v.

EVEREST NATIONAL INSURANCE
COMPANY,

               Cross-Defendant.

_____ /

## EVEREST NATIONAL INSURANCE COMPANY'S
## MOTION TO BIFURCATE TRIAL OF THE COVERAGE AND BAD FAITH CLAIMS

       EVEREST NATIONAL INSURANCE COMPANY ("Everest") hereby files this motion

to bifurcate trial of (1) the claims involving insurance coverage for Oracle Elevator Holdco, Inc.,

f/k/a OEC Holding Corporation ("Oracle") under an excess liability policy issued by Great

American Insurance Company ("Great American"), and (2) the bad faith claims against Everest.

Those claims are based on different facts and have different elements. The claims should be tried

separately in the interests of convenience and judicial economy, and to avoid jury confusion of the issues and unfair prejudice to Everest.

The coverage claims involving Great American's excess policy should be tried first because if the jury finds that Great American wrongfully denied coverage based on late notice, Oracle will no longer have a bad faith claim against Everest. Instead, that claim will be transferred to Great American under the doctrine of equitable subrogation once Great American pays under its excess policy. If and when Great American's subrogation claim ripens, it can then proceed to trial. Everest has different and additional defenses to Great American's bad faith claim as compared to its defenses to Oracle's bad faith claim.

## **INTRODUCTION AND BACKGROUND**

This case arises out of an underlying personal injury lawsuit filed by Lazaro Mendez ("Mendez or "Mr. Mendez") and his wife against Oracle which resulted in a judgment of $7,302,053 against Oracle (the "Mendez Lawsuit"). *See* D.E. 145, p. 13, ¶ 46. Oracle had primary liability insurance with Everest with a $1 million limit, and excess liability coverage with Great American with a limit of $10 million.

The verdict greatly exceeded Oracle's defense counsel's assessment of the potential range of Oracle's liability. *Id.* at p. 11, ¶ 25. An appeal was taken, but when it came time to post a supersedeas bond to stay execution of the judgment, Great American refused to post a bond for its layer of coverage and ultimately denied coverage. *Id*. at pp. 13-14. Oracle negotiated a $5.5 million settlement with Mendez under which Everest paid its $1 million primary limit and Oracle paid the remaining $4.5 million. *Id.* at pp. 13-14.

Thereafter, Great American instituted this action seeking a declaration that it "has no coverage obligations for the Mendez Lawsuit." D.E. 60, ¶ 27.  Great American asserts that it

received late notice of the Mendez Lawsuit and was prejudiced thereby. *Id.* at ¶¶ 23-25.  Oracle also has affirmative claims against regarding coverage under the Great American excess policy. *See* D.E. 145, pp. 7-24 (Counts I and III).

Meanwhile, Great American and Oracle have asserted bad faith claims against Everest, alleging that Everest could have and should have settled the Mendez Lawsuit within the $1 million primary limit. *See* D.E. 60, p. 8 (¶¶ 28-30); D.E. 145, pp. 24-49.  Great American's bad faith claim is plead in the alternative as a contingent subrogation claim. *See* D.E. 60, p. 8 (¶28). It will not ripen unless and until Great American pays the excess portion of the underlying settlement. *See, e.g.*, *Perera v. U.S. Fidelity and Guar. Co.*, 35 So. 3d 893, 900 (Fla. 2010); *Holmes Regional Medical Center, Inc. v. Allstate Ins. Co.*, 225 So. 3d 780, 785-786 (Fla. 2017).

As outlined above, the claims raised in the operative pleadings can be grouped into two main categories. The first category includes the claims regarding coverage under the Great American excess policy. The issue for those claims is whether Great American wrongfully denied excess coverage and therefore must pay the $4.5 million that Oracle paid to settle the Mendez Lawsuit or whether Oracle's excess coverage with Great American was forfeited due to prejudicial late notice.[1] The second category is the bad faith claims against Everest, for which the issue is whether Everest failed in good faith to settle the Mendez Lawsuit within the primary $1 million limit of coverage when it could and should have done so.[2]

---

[1] Oracle's operative pleading contains two counts against Great American: a claim for breach of contract (Count I) and a request for declaratory judgment that coverage exists under the Great American excess policy (Count II). *See* D.E. 145, pp. 15-16, 23-24. Count I of Great American's operative pleading raises the same issue. *See* D.E. 60, ¶¶ 1-27.

[2] Oracle's Crossclaim against Everest contains two counts: a claim for statutory bad faith and a claim for common law bad faith. *See* D.E. 145, pp. 24-39.  Ultimately, Oracle will have to elect whether to proceed on the statutory or the common law bad faith claim.  Section 624.155(8), Florida Statutes, provides that a party may only obtain a judgment under either the common law or the statute, but not both:

These claims seek the same damages. It is a fundamental principle that a party cannot obtain duplicate recovery. *See e.g. Holmes Regional Medical Center, Inc. v. Allstate Ins. Co.*, 225 So. 3d 780, 787 (Fla. 2017).

Under Florida law, which controls governs the bad faith claims against Everest,[3] if it is determined that Great American wrongfully denied coverage, Oracle will no longer has a bad faith claim against Everest. This is because the entire judgment (and settlement amount) is within the excess coverage limits and will be paid by Great American. *See Perera. v. US Fidelity and Guar. Co.*, 35 So.3d 893, 904 (Fla. 2010).  In *Perera*, the Florida Supreme Court held that the insured did not sustain recoverable damages as the result of its primary insurer's alleged bad faith because "the insurer's actions neither caused the damages claimed by the insured nor resulted in exposure of the insured to liability in excess of the policy limits of the insureds' combined policies." 35 So.3d at 895.[4]

---

The civil remedy specified in this section does not preempt any other remedy or cause of action provided for pursuant to any other statute or pursuant to the common law of this state. Any person may obtain a judgment under either the common-law remedy of bad faith or this statutory remedy, but shall not be entitled to a judgment under both remedies.

*See* Fla. Stat. § 624.155(8).

[3] The Mendez Lawsuit was filed and defended in Florida. *See* D.E. 60-3.  Consequently, Florida law controls the bad faith claims. See *Government Employees Ins. Co. v. Grounds*, 332 So. 2d 13, 14 (Fla. 1976); *Adams v. Fidelity & Cas. Co. of New York*, 920 F.2d 897, 899 n. 5 (11th Cir. 1991); *Teachers Ins. Co. v. Berry*, 901 F. Supp. 322, 323-324 (N.D. Fla. 1995).

[4] The plaintiff in *Perera* brought a claim for bad faith against a primary insurer after settling for $10 million. Altogether, the insured had combined coverage of over $25 million. The negotiated settlement provided that $5 million was to be paid by 3 excess carriers and the remaining $5 million would be sought in a lawsuit against the primary insurer who had a policy limit of $1 million and had denied coverage up to that point. The primary insurer paid its $1 million policy limit, leaving $4 million of the consent judgment outstanding. The Florida Supreme Court found that there was no causal connection between the primary insurer's bad faith and the damages claimed because "there was a substantial excess policy protecting [the insured], [the excess insurer] was willing to negotiate a settlement without contribution from [the primary insurer], [the insured] did not face

If it is determined that Great American wrongfully denied coverage, then Great American will have to pay the $4.5 million excess settlement amount that Oracle paid. Once Great American pays under the excess policy, any claim for bad faith against Everest is transferred to Great American under the doctrine of equitable subrogation. *See Perera*, 35 So. at 900 (An "excess carrier [] may bring a bad-faith claim against a primary insurer by virtue of equitable subrogation under certain circumstances where the primary insurer has not acted in good faith. Under the doctrine of equitable subrogation, an excess insurer has the right to 'maintain a cause of action ... for damages resulting from the primary carrier's bad faith refusal to settle the claim against their common insured.'"); *Vigilant Ins. Co. v. Continental Cas. Co.*, 33 So. 3d 734, 738-739 (Fla. 4th DCA 2010) (excess carrier sustains damages when it pays under the excess policy).

For the reasons set forth herein, the claims regarding coverage under Great American's excess policy should be severed for trial from the bad faith claims against Everest, with the coverage claims being tried first.

## ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

### I.    The Court Should Bifurcate the Coverage and Bad Faith Claims

Fed. R. Civ. P. 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Under this rule, the district courts have broad discretion to permit bifurcation. *Harrington v. Celburne County Bd. of Educ.*, 251 F.3d 935, 938 (11th Cir. 2001); *Gilbert v. State Farm Mut. Auto. Ins. Co.*, 311 F.R.D. 685, 686 (M.D. Fla. 2015);

---

exposure to liability in excess of the combined policies, and [the excess insurer] did not choose to either bring a bad-faith claim against [the primary insurer] or assign its claim to [the plaintiff]." 35 So. 3d at 904.

HICKS, PORTER, EBENFELD & STEIN, P.A.
5301 BLUE LAGOON DRIVE, SUITE 900, MIAMI, FL 33126 • TEL. 305/374-8171 • FAX 305/372-8038

*In re Epixtar Corp.*, 2009 WL 2500463, at *2 (S.D. Fla. Aug. 13, 2009) ("The decision to bifurcate

is committed to the sound discretion of the Court."). Rule 42(b) does not set a high standard, and

bifurcation is permitted merely "in furtherance of convenience." *Harrington*, 251 F.3d at 938;

*Gilbert*, 311 F.R.D at 686; *Romero v. Florida Power & Light Co.*, 2012 WL 1970125, at *2 (M.D.

Fla. June 1, 2012).

In addition to the issues of (1) convenience, (2) prejudice, (3) expedition, and (4) economy,

a district court considering a motion to bifurcate may also consider the following factors:

> (5) <u>whether the issues sought to be tried separately are significantly different</u>; (6)
> whether they are triable by jury or the court; (7) whether discovery has been
> directed to a single trial of all issues; (8) <u>whether the evidence required for each
> issue is substantially different</u>; (9) whether one party would gain some unfair
> advantage from separate trials; (10) <u>whether a single trial of all issues would create
> the potential for jury bias or confusion</u>; and (11) <u>whether bifurcation would enhance</u>
> or reduce <u>the possibility of a pretrial settlement.</u>

*Regions Bank v. Legal Outsource PA*, 2016 WL 4014875, at *6 (M.D. Fla. July 27, 2016)

(underlined emphasis added) (citing *Kimberly-Clark Corp. v. James River Corp. of Va.*, 131 F.R.D.

607, 608 (N.D. Ga. 1989)).

Here, the claims that Everest seeks to bifurcate are separate and distinct, and the evidence

required for each claim is substantially different. Moreover, trying the claims together would create

jury confusion and would unfairly prejudice Everest.

**A.      Bifurcation is Necessary to Avoid Juror Confusion and Prejudice**

The Eleventh Circuit has ruled that separate trials are permitted "in furtherance of

convenience or to avoid prejudice, or when separate trials will be conducive to expedition and

economy." *Itel Capital Corp. v. Cups Coal Co.*, 707 F. 2d 1253 (11th Cir. 1983) (citing Fed. R.

Civ. P. 42(b)). Because coverage and bad faith are different claims with different facts and issues,

Florida courts hold that coverage and bad faith claims should be bifurcated. *CNL Hotels & Resorts,*

6

HICKS, PORTER, EBENFELD & STEIN, P.A.
5301 BLUE LAGOON DRIVE, SUITE 900, MIAMI, FL 33126 • TEL. 305/374-8171 • FAX 305/372-8038

*Inc. v. Twin City Fire Ins. Co.*, No. 606CV324ORL-31JGG, 2006 WL 2947853, at *2 (M.D. Fla. Oct. 16, 2006).

Oracle seeks the same damages in its claims for excess coverage against Great American as it does in its bad faith claim against Everest.  Oracle cannot recover the same damages twice. *See, e.g., Holmes Regional Medical Center, Inc. v. Allstate Ins. Co.*, 225 So. 3d 780, 787 (Fla. 2017). The claims are separate and distinct and there is no apportionment of fault. In each of its claims, Oracle seeks the full amount of its damages. The jury would be hopelessly confused if it were presented with different claims for the same damages. The jury would have to be instructed that if Great American wrongfully denied excess coverage, then Oracle has no bad faith claim against Everest because the excess settlement will be paid under the excess insurance policy. *Perera. v. US Fidelity and Guar. Co.*, 35 So. 3d 893, 904 (Fla. 2010). Why, then, the jury might ask, are they hearing evidence relating to a bad faith claim against Everest?

With a substantial risk of jury confusion, Everest will be unfairly prejudiced if forced to defend a bad faith claim by Oracle at the same time that a jury is being asked to decide the threshold coverage dispute between Oracle and Great American. *CNL Hotels & Resorts, Inc.*, 2006 WL 2947853, at *5. This is especially the case here, where Oracle has no bad faith claim against Everest if Oracle prevails on the claims regarding coverage under the Great American excess policy. *Perera*, 35 So.3d at 904.

If the case proceeds without bifurcation, the jury will hear evidence related to bad faith without a foundational understanding of coverage, risking confusion and potential prejudice.  Bifurcation mitigates this risk by ensuring that the jury hears bad faith arguments only if they become relevant after the coverage decision.

By bifurcating and trying coverage first, the court can efficiently resolve whether coverage

HICKS, PORTER, EBENFELD & STEIN, P.A.
5301 BLUE LAGOON DRIVE, SUITE 900, MIAMI, FL 33126 • TEL. 305/374-8171 • FAX 305/372-8038

exists. Addressing coverage first allows the court, the parties, and the jury to focus on a single issue without the procedural and evidentiary challenges of simultaneously litigating complex bad faith issues. Bifurcation will lead to a more straightforward presentation that a jury can easily comprehend, thereby reducing the possibility of inconsistent verdicts.

**B.      Bifurcation Will Promote Judicial Economy**

An adjudication on coverage will also narrow the issues and identify which party (Oracle or Great American) owns a bad faith claim against Everest.  Accordingly, bifurcation promotes judicial economy by streamlining the issues for trial. *See Cont'l Ins. Co. v. Roberts*, No. 8:05-CV-1658 T17MSS, 2008 WL 2700054 (M.D. Fla. July 8, 2008) (bifurcation of the trial will narrow the issues, require fewer witnesses and exhibits for a second trial, and allow the juries to focus on the issues at hand, and that bifurcation would not unfairly prejudice any parties in the case).

If there is no coverage under Great American's excess policy, Great American's contingent bad faith claim vanishes, and Great American will no longer be a party to this litigation. Conversely, if there is coverage, Great American will be required to pay the excess settlement, which will eliminate Oracle's bad faith claim against Everest. *See In Re Expitar Corp.*, 2009 WL 2500463, at *3 (M.D. Fla. Aug. 13, 2009) (granting motion to bifurcate the issues of liability and damages because it would expedite a decision on liability, and a verdict of no liability would render discovery on damages unnecessary saving time and money for the parties and the court); *Fisher v. Miami-Dade County*, 2015 WL 5148888, at *1 (S.D. Fla Aug. 28, 2015) (granting the defendant's motion to bifurcate, reasoning in part that there was the possibility that bifurcation would eliminate the need to litigate certain issues).

Furthermore, resolving the coverage question first may encourage further settlement discussions between the parties, as it will narrow the issues and allow the parties to assess their

HICKS, PORTER, EBENFELD & STEIN, P.A.
5301 BLUE LAGOON DRIVE, SUITE 900, MIAMI, FL 33126 • TEL. 305/374-8171 • FAX 305/372-8038

exposure more accurately. This could eliminate the need for a bad faith phase altogether, saving resources for all parties involved.

## II.    Great American's Unmatured Alternative Claim

Great American's operative pleading contains an alternative contingent count for declaratory relief against Everest. *See* D.E. 60, ¶¶ 28-30. Great American asserts that, "[s]hould the Court deny Great American's requested relief on Count I, then Great American requests the Court to declare against Everest that Great American is entitled to reimbursement from Everest any and all amounts that Great American is required to pay Oracle on account of the Mendez Lawsuit." *Id.* at ¶ 28. This alternative Count alleges a breach of duty to Oracle to settle the Mendez Lawsuit within the primary limit when there was an opportunity to do so. "If Great American is required to pay Oracle for the Mendez Lawsuit, then Great American would be subrogated to Oracle's claims against Everest, including its claims for damages for Everest's failure to settle within limits." *Id.* at ¶ 29.

Great American's claim does not mature until it is determined that Great American wrongfully denied coverage under its policy and Great American makes payment under the policy. If the jury determines that there is no excess coverage, Great American's alternative claim never materializes.

Consequently, whether Great American will be able to proceed to trial on the alternative claim is wholly dependent on what happens in the coverage trial. Therefore, Great American's alternative claim cannot be tried until after coverage is determined. The Florida Supreme Court has made clear that a claim for equitable subrogation cannot proceed until the subrogee makes payment of the entire judgment or settlement. Until that time, the claim belongs to the subrogor (Oracle). *See Holmes Regional Medical Center, Inc. v. Allstate Ins. Co.*, 225 So. 3d 780, 785-786

HICKS, PORTER, EBENFELD & STEIN, P.A.
5301 BLUE LAGOON DRIVE, SUITE 900, MIAMI, FL 33126 • TEL. 305/374-8171 • FAX 305/372-8038

(Fla. 2017). In *Holmes*, the Florida Supreme Court rejected earlier intermediate appellate court decisions that allowed equitable subrogation claims to proceed on a contingent basis, based on the Supreme Court's review of "long-established law[.]" 225 So. 3d at 785.  The Supreme Court specifically re-affirmed the long-established rule that there is "no equitable subrogation where [an] excess insurer 'd[oes] not pay the entire settlement in the underlying tort litigation.'" *Id.* at 785 (citing *U.S. Fid. & Guar. Co. v. Essex Ins. Co.*, 188 So. 3d 906, 907 (Fla. 1ˢᵗ DCA 2016)).[5]

Additionally, Everest's defenses to Great American's contingent bad faith claim differ from its defenses to Oracle's bad faith claim. Everest's Fourth Affirmative Defense is that that Great American failed to mitigate its damages by, among other things, refusing to accept or contribute to settlement offers/demands in the Mendez Lawsuit which were substantially less than the judgment that was ultimately rendered and the post-trial settlement that was ultimately reached. *See* D.E. 130, p. 4.  Everest's Sixth Affirmative Defense is that Great American's claim is barred, in whole or in part, by the doctrine of unclean hands because of Great American's inequitable conduct, including but not limited to; (a) failing to properly monitor the Mendez Lawsuit; (b) after urging Everest not to offer its primary policy limit, failing to make reasonable and good faith offers toward settlement of the Mendez Lawsuit; (c) breaching its contractual obligations to Oracle by wrongfully denying coverage for the  Mendez Lawsuit; and (d) breaching its contractual

---

[5] In denying Everest's motion to dismiss alternative Count II, the predecessor judge in this case cited to earlier Florida intermediate appellate court decisions which were overruled by the Supreme Court in *Holmes*. *See* D.E. 103, p. 13 (citing, *inter alia*, *Attys' Title Ins. Fund v. Punta Gorda Isles, Inc.*, 547 So. 2d 1250, 1251–53 (Fla. 2d DCA 1989), and *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 429 F. Supp. 2d 1274, 1289 (M.D. Fla. 2005)).  The dissenting opinion in *Holmes* also cited to these decisions. *See Holmes* 225 So. 3d at 797-98. But the majority opinion in *Holmes* rejected the ability to bring contingent unmatured equitable subrogation claims. *Id.* at 785-786; *see also* 225 So. 2d at 798, Pariente, J., concurring ("I concur fully in the majority opinion. I write separately to address the argument advanced by Justice Lawson in his dissent concerning fairness and efficiency as a reason to allow 'contingent equitable subrogation.'").

HICKS, PORTER, EBENFELD & STEIN, P.A.
5301 BLUE LAGOON DRIVE, SUITE 900, MIAMI, FL 33126 • TEL. 305/374-8171 • FAX 305/372-8038

obligations to Oracle by failing and refusing to pay any part of the judgment or settlement which was within Great American's  policy. *Id.* at pp. 4-5.

These defenses do not apply to Oracle's claim against Everest. Oracle's matured bad faith claim and Great American's unmatured potential claim for bad faith cannot proceed in the same trial. This is because the defenses are different, and the jury would be hopefully confused as to who owns the bad faith claim and how the issue of whether there is excess coverage affects that question.

Florida allows excess carrier equitable subrogation claims because, "if an insured purchases excess coverage, he in effect substitutes an excess insurer for himself." *U.S. Fire Ins. Co. v. Morrison Assur. Co.*, 600 So. 2d 1147, 1151 (Fla. 1st DCA 1992).  Therefore, when there is excess coverage, the primary carrier has duties to the excess carrier who is standing in the shoes of the insured. *Id.* Obviously, Everest would have no duty to Great American if there is no excess coverage. A jury needs to know who owns the claim in order to accurately assess whether Everest fulfilled its duties.

## CONCLUSION

For the foregoing reasons, Everest respectfully requests that this Court bifurcate (1) the claims involving coverage under Great American's excess policy, and (2) the bad faith claims against Everest.  The threshold issue of whether coverage exists under the Great American excess policy should be tried first.  The second trial would address the bad faith claim against Everest (either by Oracle or Great American, once it is determined who owns the claim). Bifurcating the trial in this manner will prevent unfair prejudice to Everest, reduce the possibility of jury confusion and inconsistent verdicts, and serve judicial economy.

HICKS, PORTER, EBENFELD & STEIN, P.A.
5301 BLUE LAGOON DRIVE, SUITE 900, MIAMI, FL 33126 • TEL. 305/374-8171 • FAX 305/372-8038

**Request for Hearing**

Pursuant to Local Rule 7.1(b)(2), Everest respectfully requests an oral argument on this motion. This case presents a factually unique situation where (1) the issue of whether excess coverage has been forfeited by late notice has yet to be determined, but the insured is seeking the same sums covered under the excess policy from both the excess carrier and the primary carrier in a bad faith claim, and (2) the excess carrier is has plead an unmatured alternative claim for bad faith against the primary carrier. Everest submits that a hearing would be helpful to the Court in deciding this motion and applying established Florida law to the unique factual situation. Everest estimates that 40-60 minutes would be sufficient for this hearing.

**Local Rule 7.1(a)(3) Certification**

Counsel for Everest conferred in good faith with counsel for Oracle and Great American, on multiple occasions via email and telephone conference over the past month, in a good faith effort to resolve the issues raised in this motion.  Oracle and Great American oppose the relief sought herein.


Respectfully submitted,

By:     /s/ Jackon F. Shuford
        IRENE PORTER
        Florida Bar No. 567280
        JACKSON F. SHUFORD
        Florida Bar No. 1018807
        HICKS, PORTER, EBENFELD
         & STEIN, P.A.
        5301 Blue Lagoon Drive, Suite 900
        Miami, FL  33126
        Tel:    305/374-8171
        Fax:    305/372-8038
        Primary:    iporter@mhickslaw.com
                   jshuford@mhickslaw.com
        Secondary:    eclerk@mhickslaw.com

bpaz@mhickslaw.com
gmunoz@mhickslaw.com
*Counsel for Defendant/Cross-Defendant, Everest*
*National Insurance Company*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on **November 13, 2023**, a true and correct copy of the foregoing was filed using the Court's Electronic Filing system (CM/ECF), which will serve a copy on all counsel of record.

By:   <u>s/ Jackson S. Shuford           </u>
JACKSON F. SHUFORD
Florida Bar No. 1018807