UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 0:22-cv-61997-AHS

GREAT AMERICAN INSURANCE COMPANY,

    Plaintiff,

v.

ORACLE ELEVATOR HOLDCO, INC. FKA OEC HOLDING CORPORATION, LAZARO MENDEZ, and JOETTE MENDEZ,

    Defendants,
_____/

ORACLE ELEVATOR HOLDCO, INC. FKA OEC HOLDING CORPORATION,

    Cross-Plaintiff,

v.

EVEREST NATIONAL INSURANCE COMPANY,

    Cross-Defendant.
_____/

**EVEREST'S MOTION TO DETERMINE DEFECTIVENESS OF GREAT AMERICAN'S ALTERNATIVE COUNT II AGAINST EVEREST AND INCORPORATED MEMORANDUM OF LAW**

Everest National Insurance Company ("Everest") files this motion, pursuant

to the Court's Order (DE 263), to determine the defectiveness of Great American Insurance Company's ("Great American") alternative Count II Against Everest and states as follows:

## BACKGROUND

1. In this case, Oracle Elevator Holdco, Inc. ("Oracle") sought excess insurance coverage from Great American to recover $4.5 million it paid (in addition to the $1 million Everest paid) to settle the underlying Mendez claim after Great American denied excess coverage and related costs incurred in connection with the settlement and appellate bond. (Doc. 145, ¶¶ 49, 55).[1] Oracle also sought to recover its damages from Everest in a bad faith claim. (Doc. 145, pp. 24-30).

2. Great American disputed its obligation to provide coverage under its excess policy and brought an *alternative* claim for bad faith against Everest should Great American lose on coverage. (Doc 60, p. 8). Great American sought a declaration that "Everest must reimburse Great American for any amounts Great American is required to pay Oracle" on the ground that "*[i]f* Great American is required to pay Oracle for the Mendez Lawsuit, *then* Great American would be subrogated to Oracle's claims against Everest, including its claims for damages for

---

[1] Oracle also filed a bad faith claim against Great American, which was abated for some time.

Everest's failure to settle within limits."[2]  *Id.* at paragraphs 28-30.

3. On January 24, 2025, this Court bifurcated the trial on excess coverage and the trial on bad faith, with coverage to proceed first. *See* Doc 237, par. 6 & 8; **Ex. A**, January 24, 2025 transcript at p. 77, ll. 6-14. The ordered bifurcation served the purpose of determining which party, Oracle or Great American, would be able to bring a claim against Everest for the $4.5 million excess settlement amount.[3] It was anticipated that if coverage was determined in Great American's favor, then Great American would no longer be a party to the case. ***Alternatively***, **if** Great American were found to owe coverage, **then** Great American would have an equitable subrogation bad faith claim against Everest for the excess settlement. *Id.* at 63:24-64:3, 64:25-65:6, 66:9-19.

4. Great American and Oracle subsequently settled the coverage action (and Oracle's bad faith claim against Great American), filed a joint notice of settlement on April 16, 2025, and filed a joint motion for voluntary dismissal of all claims between them with prejudice on April 25, 2025. (Doc. 250; 254). Consequently, this Court dismissed those claims and cancelled Phase 1 of the jury trial on the issue of Great American's excess coverage. (Doc. 255).

5. Oracle and Great American have advised Everest that their settlement

---

[2] All emphasis herein is supplied unless otherwise noted.
[3] At the same time, the Court unabated Oracle's bad faith claim against Great American. *See* January 24, 2025 transcript, pp. 75-76.

agreement is confidential. However, they have disclosed that Great American made an initial settlement payment of $750,000 to Oracle. *See* **Exhibit B**. Great American asserted that Great American intends to introduce proof of the initial settlement payment "at the Phase 2 trial as evidence of the damages it has incurred, which it seeks to recover from Everest." *See* **Exhibit C**.[4]

6.  Great American's pleading against Everest is defective because the "*alternative*" Count was wholly dependent on a prior determination that Great American owed and was required to pay Oracle coverage under the excess policy. This determination has not and will not occur as a result of the settlement.

7.  Consequently, Great American's present pleading does not reflect the basis and nature of its claim against Everest post-settlement with Oracle. Great American should be required to amend it pleading to state the legal basis and elements of its claim against Everest, namely whether Great American accepted coverage under the excess policy and made an unconditional payment under the policy that is not reimbursable. Otherwise, the payment would be voluntary.

---

[4] Oracle initially advised that it was seeking all of its damages from Everest because Oracle must reimburse Great American the initial settlement payment if Oracle succeeds in its bad faith claim against Everest. Conversely, if Oracle does not recover against Everest, there will be further payment owed by Great American to Oracle. However, the latest information from Great American and Oracle is that Oracle is not seeking the $750,000 initial settlement payment it received from Great American from Everest. *See* **Ex. D** (June 23, 2025 6:20 pm email).

## ARGUMENT

Great American's *alternative* claim was contingent on a determination of coverage. *If* Great American was determined to owe coverage, *then* it was making a claim against Everest for bad faith. (Doc. 60, p. 8). The necessary predicate to the bad faith claim pled by Great American no longer exists. Consequently, the pleading is clearly defective.

Where, as here, a subsequent development in a case renders the claim in the operative pleading null, such claim should be amended and further pleading required to state the present existing legal basis for the claim. *See e.g. Troiano v. Supervisor of Elections in Palm Beach Cnty, Fla.*, 382 F. 3d 1276, 1282 (11th Cir. 2004) (events occurring subsequent to the filing of a lawsuit may moot the claim that was pled).

A plaintiff must allege five elements in order to maintain a claim for equitable subrogation: "(1) that it made the payment at issue to protect its own interests, (2) the payment was non-voluntary, (3) it was not primarily liable for the debt paid, (4) it paid the entire debt, and (5) subrogation would not work any injustice to the rights of a third party." *Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1005 (11th Cir. 2004) (citing *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So.2d 638, 646 (Fla. 1999).

If an excess insurer owes no duty to pay on behalf of its insured, it is a volunteer and is unable to seek equitable subrogation. *See Amerisure Ins. Co. v.*

*Southern Waterproofing, Inc.*, No. 3:14-cv-154-J-34JRK, 2014 WL 4682898 * 5 (M.D. Fla. Sept. 19, 2014) ("Indeed, if Amerisure owed no duty and was merely a 'volunteer or stranger who, without any duty or obligation to intervene ... [paid] the debt of another,' then it would be unable to seek equitable subrogation"), citing *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 647 (Fla. 1999). *Compare Galen Health Care, Inc. v. American Cas. Co. of Reading, Pennsylvania*, 913 F. Supp. 1525, 1531 & 1534 (M.D. Fla. 1996) (excess insurer seeking subrogation from primary insurer was not a volunteer where it was required by the terms of its policy to indemnify nurse as an additional insured for the claim against her: "Plaintiff's policy covered the direct liability of Nurse Lason, in addition to the hospital's vicarious liability for her actions, and the excess policy would have been required to indemnify her if even she had been the only one found liable"; "[B]ecause Lason was covered by Plaintiffs' true excess policy, she was indemnified for those damages by Plaintiffs, and her rights against ACCR were subrogated to Plaintiffs").

Likewise, if the payment was conditional and is subject to reimbursement, there would be no right of subrogation.

Consequently, Great American should be required to amend its claim against Everest to state the legal basis and elements of its claim against Everest including whether Great American accepted coverage. under the excess policy and made unconditional payment thereunder. Otherwise the payment would be voluntary.

6

## CERTIFICATE OF GOOD FAITH CONFERENCE

Undersigned counsel certifies that she has conferred with counsel for Oracle and Great American in a good faith effort to resolve the issues raised by this motion but has been unable to do so.

By: s/ Elizabeth A. Hernandez
IRENE PORTER
Florida Bar No. 567280
ELIZABETH A. HERNANDEZ
Florida Bar No. 1025758
HICKS, PORTER & STEIN, P.A.
5301 Blue Lagoon Drive, Suite 900
Miami, FL  33126
Tel:   305/374-8171
Fax:   305/372-8038
Primary:     iporter@mhickslaw.com
             ehernandez@mhickslaw.com
Secondary:   eclerk@mhickslaw.com
             bpaz@mhickslaw.com
             gmunoz@mhickslaw.com
*Counsel for Cross-Defendant, Everest National Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **August 21, 2025**, a true and correct copy of the foregoing was filed using the Court's Electronic Filing system (CM/ECF), which will serve a copy on all counsel of record.

By: s/ Elizabeth A. Hernandez
ELIZABETH A. HERNANDEZ
Florida Bar No. 1025758